# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2478 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Fed. Insurance Co. vs. Helmar Lutheran Church | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff to file amended complaint as discussed in open court. ENTER MEMORANDUM OPINION AND ORDER: Defendant Helmar's motion for summary judgment is DENIED. Settlement conference set for 2/15/05 at 1:30p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 14 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | rbf | 16 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 2004 DEC 13 PM 4:31 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL INSURANCE )
COMPANY, as Subrogee of NATIONAL )
MANUFACTURING COMPANY, )
) Case No. 04 C 2478
Plaintiff, )
) Judge Mark Filip
v. )
)
HELMAR LUTHERAN CHURCH, )
)
Defendant. )

DOCKETED
DEC 1 4 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Insurance Company ("Plaintiff" or "Federal") is suing Helmar Lutheran Church ("Defendant" or "Helmar") as subrogee of National Manufacturing Company ("National") under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.* ("Contribution Act"). Federal seeks contribution from Helmar for a $1,450,000 settlement it paid on behalf of National to Jean Wissmiller to settle a personal injury suit for injuries she sustained while using a swing set on Helmar's property. Federal alleges that the Contribution Act subjects Helmar to a contribution claim for the settlement because it acted negligently (Count I), and that in the alternative, Helmar is subject to a contribution claim because it engaged in willful and wanton misconduct (Count II). Helmar contends that it is immune for all but willful and wanton misconduct under the Illinois Recreational Use of Land and Water Act and that its actions did not amount to willful and wanton misconduct as a matter of law.

This case is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, Defendant's motion for summary judgment is denied.



## BACKGROUND FACTS

Plaintiff Federal Insurance is a New Jersey corporation, and its principal place of business is also in New Jersey. (Pl.'s Compl. ¶ 1.) Federal has filed this suit as subrogee of National Manufacturing Company, a bolt manufacturer. (*Id.* at 2.) Defendant Helmar Lutheran Church is an unincorporated association located in Helmar, Kendall County, Illinois, and none of its members are citizens New Jersey, the state of citizenship of the Plaintiff, Federal. (D.E. 16 ¶ 2; Pl.'s Compl. ¶ 2; Def.'s Ans. ¶ 2.)[1]

On July 20, 1997, Jean Wissmiller walked to a playground area on land owned by Helmar to look for her children. (Def.'s St. ¶ 5.) Next to the playground area was a swing set. (*Id.* ¶ 4.) The swing set has always been open to the public and Helmar has never charged a fee for using it. (*Id.* ¶¶ 18-19.) Ms. Wissmiller's daughter and a neighbor child were there and Ms.

---

[1] On November 18, 2004, this Court issued an order requesting the parties to clarify certain matters relating to the propriety of this Court's diversity jurisdiction. (D.E. 15.) In response to that order, Federal filed an amended complaint that made clear that Helmar is an unincorporated association, none of whose members are citizens of New Jersey, the state of citizenship of the Plaintiff, Federal. (D.E. 16 ¶¶ 1-2.) *See generally Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("If a firm is not a corporation, its citizenship is determined by the citizenship of its proprietor, partners, members, or other principals."); *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) ("General partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen."). Furthermore, Federal clarified that it is not seeking damages in excess of the amount it paid to Ms. Jean Wissmiller in the underlying settlement of her personal injury suit; that National did not pay any part of that settlement, for which this action seeks reapportionment; and that National is not to receive any portion of any amount that Federal may receive through this suit. (D.E. 16 ¶¶ 32-33.) Accordingly, National is not a real party in interest in this suit. *See Federal Insurance Co. v. Your Homework, Inc.*, 280 F. Supp. 2d 844, 845 (N.D. Ill. 2003) (Shadur, J.) (collecting cases). If National had been a real party in interest, diversity jurisdiction may not have existed, in that Helmar likely has members who are citizens of Illinois, and it appears as though National might be a citizen of Illinois. *See id.* However, because National is not a real party in interest, and because Helmar and Federal are completely diverse, subject matter jurisdiction appropriately lies.

Wissmiller sat down on a swing and talked to them. (*Id.* ¶ 8.) Ms. Wissmiller then began to swing with the children. (*Id.* ¶ 17.) While Ms. Wissmiller was swinging, the eye bolt supporting the swing opened, causing the chain and the connecting link supporting the swing to separate from the eye bolt. (Compl. Count I ¶ 19; Def.'s Ans. Count I ¶ 19.) As a result, Ms. Wissmiller fell to the ground and was injured. (*Id.*)

Ms. Wissmiller filed suit against Helmar, National (the manufacturer of the eye bolt), and Ace Hardware (the vendor of the eye bolt) seeking recovery for her injuries. (Compl. Count I ¶ 27; Def.'s Ans. Count I ¶ 27.) Before trial took place in the Circuit Court of Kendall County, Illinois, Federal and Ms. Wissmiller entered into a settlement whereby Federal paid Ms. Wissmiller $1,450,000 on behalf of National, $25,000 on behalf of Ace Hardware, and also paid Mr. Wissmiller $25,000 on behalf of National. (Compl. Count I ¶ 28; Def.'s Ans. Count I ¶ 28.) In exchange for these payments, the Wissmillers released National, Ace Hardware, and Helmar from all liability. (*Id.*) Helmar did not contribute to the settlement. (*Id.*)

Prior to the settlement, National had filed a counterclaim for contribution against Helmar. (Compl. Count I ¶ 27; Def.'s Ans. Count I ¶ 27.) It appears that, following the settlement, National's contribution claim was amended to show Federal as the real party in interest. (D.E. 10 at 2.) Federal then voluntarily dismissed its complaint and thereafter refiled the contribution action in this Court. (D.E. 1.) There is no allegation that Federal's action here is untimely or otherwise in conflict with the state court dismissal of the prior contribution action.

In 1992 there was a similar accident involving Helmar's swing set. (Def.'s St. ¶ 22.) In that incident, an eye bolt on the swing broke during vacation bible school and a child fell from the swing. (*Id.*) The child was not injured. (*Id.*) After the 1992 incident, Tom Mathre, a church

3

trustee, replaced the eye bolts on the swing set prior to the start of vacation bible school each year from 1993 to 1996. (*Id.* ¶ 24.) Vacation bible school was held each year in June or July. (*Id.* ¶ 23.) Mr. Mathre participated in constructing a backstop for a baseball diamond on church property the weekend before the 1997 vacation bible school. (*Id.* ¶ 25.) Because he was busy with that project, he forgot to inspect the eye bolts before vacation bible school began and the eye bolts were not replaced in 1997. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court's role is to determine whether there is a genuine issue of material fact, not to weigh evidence or make credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion for summary judgment. *Id.* at 255. The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

As discussed further below, Helmar could not be liable for ordinary negligence to Ms. Wissmiller, but only could be liable for willful and wanton misconduct under the Illinois Recreational Use of Land and Water Act ("Recreational Use Act"), 745 ILCS 65/1 *et seq.*, because Ms. Wissmiller was engaged in a recreational activity at the time of her accident and was not charged a fee for her use of the recreational area. To resolve Helmar's motion, two principal questions must be addressed. The first is whether, as Helmar contends, Federal is required to prove willful and wanton conduct to obtain contribution from Helmar pursuant to the Contribution Act, or, as Federal argues, it is merely required to prove that Helmar contributed to the harm (*i.e.*, acted in a negligent or otherwise blameworthy manner) so as to liable for contribution. The second issue is whether Helmar's alleged misconduct could potentially be found to constitute willful and wanton misconduct for purposes of the Recreational Use Act.

## COUNT I - NEGLIGENCE

## RECREATIONAL USE ACT LIABILITY

The Seventh Circuit recently explained that the Recreational Use Act "serves to immunize landowners whose land is being used for recreational purposes from all but wanton and willful conduct." *Cacia ex rel. Randolph v. Norfolk & W. Ry. Co.*, 290 F.3d 914, 917 (7th Cir. 2002); *accord Hall v. Henn*, 802 N.E.2d 797, 800 (Ill. 2003) ("the Act immunizes landowners from negligence liability with respect to any person who enters their property for recreational purposes, *provided that such property is open to the public.*") (emphasis in original). The Act provides that:

> Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

745 ILCS 65/3 (West 2004). Section 6 of the Act further provides:

> Nothing in this Act limits in any way any liability which otherwise exists:
>
> (a) For willful and wanton failure to guard or warn against a dangerous condition, use, structure, or activity.
>
> (b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease is not a charge within meaning of this Section.

745 ILCS 65/6 (West 2004).

The Act defines recreational or conservation purposes as "any activity undertaken for conservation, resource management, exercise, education, relaxation, or pleasure on land owned by another." 745 ILCS 65/2(c) (West 2004). The Illinois Supreme Court also has made clear that "the Act's protections are *not* available to landowners who restrict the use of their property to invited guests only." *Hall*, 802 N.E.2d at 800 (emphasis in original). Instead, such land must be open to the public. *Id* at 799-800. Because Ms. Wissmiller's swinging on a swing set is properly classified as exercise, relaxation, or pleasure, and because Helmar made the playground open to the public and did not charge any fee, Ms. Wissmiller's activity was within the scope of the Recreational Use Act. Therefore, and as the Circuit Court of Kendall County, Illinois held, Ms. Wissmiller could not have recovered personally as against Helmar under ordinary negligence principles related to premises liability. *See generally Hall*, 802 N.E.2d at 800.

## CONTRIBUTION ACT

The Illinois Contribution Act provides that:

> [W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

740 ILCS 100/2 (West 2004).

Illinois courts have taken a robust view of the right of contribution created by the Illinois Contribution Act. For example, in *People v. Brockman*, 574 N.E.2d 626, 635 (Ill. 1991), the Illinois Supreme Court stated that "[s]o valued are principles of fairness and the avoidance of unjust enrichment that even if a person who might otherwise be immune has contributed as a cause to the injury he should be liable in contribution. This is so even though he cannot be directly liable to the plaintiff." *Brockman*, 574 N.E.2d at 635. *Brockman* further counseled that, under Illinois law, "[t]he theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share the liability for the wrong done. Thus, if one person's wrongful conduct actually causes another's injury, he should, as a culpable party, be liable for contribution." *Id.*

In this regard, in *Doyle v. Rhodes*, 461 N.E.2d 382 (Ill. 1984), the defendant/third-party plaintiff, an automobile driver who struck the plaintiff (a road worker), was able to advance a contribution claim against the plaintiff's employer, a road contractor. The defendant/third-party plaintiff was able to seek recovery under, *inter alia*, a negligence theory, notwithstanding that the original plaintiff was precluded from recovering on any negligence claim from his employer for the work-related accident under the Illinois Workers' Compensation Act. *Id.* at 385. The Illinois Supreme Court stated that "the intent of the contribution statute was to reach anyone who is

culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege." *Id.* at 386. The Court further explained that "[t]he Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements—the employment relationship and the nexus between the employment and the injury—must be established by the employer, and which is waived if not asserted by him in the trial court." *Id.*

Similarly, *Stephens v. McBride*, 455 N.E.2d 54 (Ill. 1983), involved a contribution action by a defendant/third-party plaintiff alleged to be liable to the plaintiff for injuries sustained in an automobile accident. *Id.* at 55. The defendant/third-party plaintiff filed a contribution claim against the Village of Maywood, notwithstanding that the original plaintiff was barred from suing Maywood because he had failed to comply with the one-year notice provision set forth in the Illinois Local Governmental and Governmental Employees Tort Immunity Act. *Id.* at 517-19. The Illinois Supreme Court ruled that the contribution claim alleging negligence by Maywood could proceed. *See id.* at 520 (rejecting "the contention that defendant is precluded from seeking contribution under the Contribution Act solely because, at the time he filed his third-party complaint for contribution, plaintiff was precluded from recovering from the village" because plaintiff had not timely notified the village as required by the Tort Immunity Act). *Accord Delaney v. McDonald's Corp.*, 634 N.E.2d 749, 750 (Ill. 1994) (holding that contribution claim of defendant/third-party plaintiff could proceed, notwithstanding that original plaintiff's suit against the putative contributor was previously dismissed as time-barred).

Lastly, in *Brockman*, the defendant/third-party plaintiffs, the Brockmans, who were sued by the State of Illinois for various alleged violations of the Illinois Environmental Protection Act,

8

were able to advance contribution claims against the various generators and transporters of waste deposited at the Brockmans' landfill. *Brockman*, 574 N.E.2d at 628-29. The putative third-party defendants to the contribution claim alleged that the contribution action was impermissible because, *inter alia*, "there is no precedent in Illinois to expand liability for abatement of public nuisances to parties with no control over the site. They invite this court's attention to the oft-stated rule that liability for the pollution requires that the defendant be in control of the pollution either through ownership or control of the property." *Id.* at 635 (collecting cases). The Illinois Supreme Court rejected this argument against potential contribution liability, stating that

> The control argument is compelling, and we take no exception to the general rule as it is applied in original actions like those cases which we cite here. However, the differing policy interests attendant to our contribution statute require that we not regard 'control' as the dominant consideration in cases such as the one before us.

*Id.* at 635. The Illinois Supreme Court then proceeded to analyze the Illinois Contribution Act and stated that "the 'Contribution Act focuses, as it was intended to do, on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for the loss.'" *Id.* (quoting *Doyle*, 461 N.E.2d at 388); *see also id.* ("[T]he theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done.") (internal quotation marks and citation omitted). Thus, according to the Illinois Supreme Court, "if one person's wrongful conduct actually causes another's injury, he should, as a culpable party, be liable for contribution." *Id.*

As stated, it is well settled under Illinois law that a putative Contribution Act defendant cannot avoid a contribution claim even though the party could defend against the first-party plaintiff through a procedural bar such as a statute of limitations, an immunity, or some other

9

affirmative defense. *See Doyle*, 461 N.E.2d at 386; *Vroegh v. J&M Forklift*, 651 N.E.2d 121, 125 (Ill. 1995). And, as stated, a unanimous Illinois Supreme Court and a unanimous panel of the Seventh Circuit have both recently referred to the protection afforded by the Recreational Use Act as a type of immunity from the liability that otherwise would attach under ordinary principles of premises liability. *See Cacia ex rel. Randolph*, 290 F.3d at 917 (Recreational Use Act "serves to immunize landowners whose land is being used for recreational purposes from all but wanton and willful conduct"); *accord, e.g., Hall*, 802 N.E.2d at 800 ("The Act is sweeping in its scope, immunizing a landowner from negligence liability with respect to any person who enters the landowner's property for, among other things, 'exercise, education, relaxation, or pleasure.'") (quoting 745 ILCS 65/2(c), 3, 4 (West 2004)). These two principles would seem to doom Helmar's summary judgment argument that it cannot be liable for contribution under a negligence theory because Ms. Wissmiller, the original plaintiff, could not have recovered under an ordinary negligence theory due to the protections of the Recreational Use Act.

Helmar attempts to avoid this result by citing *Vroegh v. J&M Forklift*, 651 N.E.2d 121 (Ill. 1995). *Vroegh* rejected a contribution claim against a defendant who could not be liable to the decedent's estate as a result of the "fireman's rule"—a rule which provides that a landowner must exercise reasonable care to prevent injury to firemen that might result from a cause independent of a fire, but that the landowner has no duty to prevent injury to the firefighter resulting from the fire itself. *Id.* at 124. *Vroegh* noted that:

> Unlike an affirmative defense, the "fireman's rule" does not presuppose the existence of an otherwise valid cause of action. It goes to the threshold question of whether an owner or occupier of land has any duty to fire fighters injured while fighting a fire on his premises. Where the rule applies, it means that no duty is imposed by law.

*Vroegh*, 651 N.E.2d at 126; *see also id.* ("absence of duty is not an affirmative defense. It attacks

10

the legal sufficiency of the plaintiff's claim. Rather than giving color to the cause of action, it negates one of the action's basic elements."). Helmar cites *Vroegh* and notes that Section 3 of the Recreational Use Act states that "[e]xcept as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes . . . ." 745 ILCS 65/3.

In the absence of recent and clear statements from a unanimous Illinois Supreme Court and the Seventh Circuit (albeit both speaking in *dicta* and in cases in which this precise issue was not under review), the Court might find this argument compelling. However, in *Hall*, the Illinois Supreme Court *repeatedly* referred to the protections afforded by the Recreational Use Act as a type of immunity available for a qualifying landowner. *See id.* at 799-800 ("Sections 3 and 4, in turn, immunize landowners from negligence liability with respect to 'any person' who enters their property for recreational purposes." (citing 745 ILCS 65/3, 4); *id.* at 800 ("The Act is sweeping in its scope, immunizing a landowner from negligence liability with respect to any person who enters the landowner's property for, among other things, 'exercise, education, relaxation, or pleasure.'" (quoting 745 ILCS 65/2(c), 3, 4); *id.* ("Reading these provisions together, as we must, we conclude that the Act immunizes landowners from negligence liability with respect to any person who enters their property for recreational purposes, *provided that such property is open to the public.*") (emphasis in original). The premise of the analysis in *Hall* appears to be that the protections afforded by the Recreational Use Act are protections for a qualifying landowner who successfully invokes the Act and thereby displaces the otherwise applicable scope of ordinary premises liability. *See id.* ("[W]ere we to ignore section 1's express caveat that the property in question be made available for such purposes to the public we would

11

largely eliminate premises liability in this state. That clearly was not the legislature's intent.") (emphasis omitted).

Moreover, as *Hall* (which held that a landowner must hold his land open to the general public and not simply to invited guests to qualify for the protections of the Act, *id.*), and other provisions of the Recreational Use Act make clear, to qualify for the protections of the Act, a landowner must first establish various prerequisites to displace the otherwise applicable scope of premises liability. *See* 745 ILCS 65/2, 3 (requiring the land to be used for certain defined "recreational or conservation purposes"); 745 ILCS 65/4 (requiring land to be made available "without charge"); *Hall*, 802 N.E.2d at 800 (requiring that land must be made open to the public generally). Thus, the protection afforded by the Recreational Use Act is not available as against a well-pleaded ordinary premises liability/negligence claim until those prerequisites are established. Under these circumstances—*i.e.*, where certain prerequisites needed to be established before the defendant could defeat potential liability—*Doyle* held that the putative contributor was 'subject to liability in tort' within the meaning of the Contribution Act and therefore could be pursued in a contribution action. *Doyle*, 461 N.E.2d at 387.[2] Given all of this,

---

[2] One might assert that this analysis is too imprecise, in that a putative defendant is *always* potentially liable to a tort action until the party takes certain steps to defeat potential liability—whether it be establishing certain facts that make the claim unavailing, or even just responding to the complaint so as to avoid a default judgment on the tort claim. In fact, in *Doyle*, Chief Justice Ryan of the Illinois Supreme Court made precisely this argument in dissent. *See id.* at 391 (Ryan. C.J., dissenting) ("As I read the opinion, it states that, since an employer may have a judgment entered against him in a negligence action if he does not establish the employ-employee relationship, then he is 'subject to liability in tort' and the right of contribution exists. Theoretically, the same reasoning can be applied to any situation. A complete stranger to a transaction may have a judgment entered against him if he is served with process and takes no action to defend himself and permits a judgment to be entered."). On this point of Illinois law, Chief Justice Ryan persuaded no one in the otherwise-unanimous *Doyle* court. The *Doyle* majority stated that "[a]t the time of an injury for which an employer's negligence is partly

12

the Court believes it is most appropriate to follow the statements in *Hall* and *Cacia* viewing the protections of the Recreational Use Act as an immunity of the sort that the Illinois courts have seen as not defeating potential liability under the Contribution Act.

In addition, there is a strong theme in Illinois Contribution Act caselaw teaching that, to be liable for a Contribution Act claim, "[a]ll that is required is that the perso[n] seeking contribution and the perso[n] from whom contribution is sought be potentially capable of being held liable to the [original] plaintiff in a court of law or equity." *Vroegh*, 651 N.E.2d at 125 (collecting cases). Furthermore, "'there is no requirement that the basis for contribution mirror the theory of recovery asserted in the original action.'" *Brockman*, 574 N.E.2d at 634 (quoting *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 516 N.E.2d 260, 267 (Ill. 1987)); *see also J.I. Case*, 516 N.E.2d at 262, 267 (allowing contribution action by product manufacturer sued for product liability as against original plaintiff's employer, with the contribution claim asserting negligence, misuse, and assumption of risk). If, as the Circuit Court of Kendall County held, and as this Court finds below, Helmar was potentially liable to Ms. Wissmiller under a willful and wanton theory, then Helmar is also subject to a contribution action by other joint tortfeasors, who may recover so long as Helmar engaged in blameworthy conduct. *See Brockman*, 574 N.E.2d at 631 ("The Contribution Act is founded upon the doctrine of unjust enrichment, and creates a separate substantive right of restitution rather than a derivative right.")

---

responsible, the employer is in fact 'subject to liability in tort' to his employee, although that liability can be defeated depending on the response he chooses to make to his employee's claim in the event the employee decides to sue in tort." *Doyle*, 461 N.E.2d at 387. Accordingly, *Doyle* held that the employer could be liable in negligence in a contribution action, notwithstanding that the original plaintiff/employee could not sue the employer at all because of the Illinois Workers' Compensation Act. *Id.* at 386-87.

13

(collecting authorities); *id.* at 635 ("Thus, if one person's wrongful conduct actually causes another's injury, he should, as a culpable party, be liable for contribution.").

Accordingly, for the aforementioned reasons, Defendant's motion for summary judgment on Count I, which seeks contribution under the Illinois Contribution Act for Helmar's alleged negligence, is denied.

## COUNT II-WILLFUL AND WANTON CONDUCT

Helmar also contends that it cannot be liable as a matter of law on the facts alleged for willful and wanton conduct. The Illinois Supreme Court has defined willful and wanton conduct in the following terms:

> A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

*Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 405 (Ill. 1994) (internal quotation marks and citation omitted); *accord, e.g., American Nat'l Bank & Trust Co. v. City of Chicago*, 735 N.E.2d 551, 557 (Ill. 2000) (quoting *Ziarko*). A plaintiff seeking to prove willful and wanton conduct must establish that a defendant acted in "reckless disregard for the safety of others . . . [and] allege facts establishing that the defendant failed, after knowledge of impending danger, to exercise ordinary care to prevent it or that defendant failed to discover the danger through recklessness or carelessness when it could have been discovered by ordinary care." *Spangenberg v. Verner*, 747 N.E.2d 359, 364 (Ill. App. 2001) (collecting cases). The Illinois Supreme Court has stated that, under Illinois law, "there is a 'thin line' between simple negligence and willful

and wanton acts" and that "[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko*, 641 N.E.2d at 406.

Under Illinois law, knowledge of prior accidents can be sufficient to support a finding of willful and wanton conduct if the condition is not remedied properly. *See, e.g., Cacia*, 290 F.3d at 920 (collecting cases) ("A defendant may be found to have engaged in willful and wanton conduct if it has been informed of a dangerous condition or was aware of the fact that others had been injured because of the condition, and failed to respond to or otherwise remedy the dangerous condition."); *Scarano v. Town of Ela*, 520 N.E.2d 62, 67 (Ill. App. 1993) (defendant's failure to remedy alleged defective condition of playground slide after knowledge of prior injuries from alleged defect held to be sufficient to state a cause of action for willful and wanton conduct). It is undisputed that Helmar was aware of a similar accident (albeit without injury) occurring in 1992 due to eye bolt wear. (Compl. Count II ¶ 11; Def.'s Ans. Count II ¶ 11; Def.'s St. ¶ 22.) It is also undisputed that Helmar sought to remedy the potentially dangerous condition by inspecting and replacing the eye bolts each year from 1993 to 1996. (Compl. Count II ¶¶ 8-9, 13; Def.'s Ans. Count II ¶ 8-9, 13.) To be sure, Helmar's rehabilitative efforts between 1993 and 1996 showed a concern for possible injuries and would counsel against a finding of reckless disregard for the safety of others. *See Lester v. Chicago Park Dist.*, 513 N.E.2d 72, 75 (Ill. App. 1987); *see also Cacia*, 290 F.3d at 921 (defendant not liable for willful and wanton conduct if it made reasonable efforts to ensure the safety of the accident site). However, no inspection was conducted in 1997, and the Court agrees with the Circuit Court of Kendall County (which refused to dismiss the willful and wanton count of Ms. Wissmiller against Helmar) that the issue

15

of whether the totality of Helmar's actions could constitute willful and wanton conduct is a question that, under Illinois law, fairly should be left for a jury to resolve. *See Prowell v. Loretto Hosp.*, 791 N.E.2d 1261, 1265 (Ill. App. 2003) ("Whether specific acts amount to willful and wanton conduct is ordinarily a question of fact for the jury, and only in an exceptional case will the issue of willful and wanton misconduct be taken from the jury's consideration or be ruled on as a question of law."); *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003) ("Whether conduct is willful and wanton is a factual question."). As discussed in *Prowell*, whether Helmar's actions were such that it exhibited "a reckless disregard for the safety of others" is a question that, on the facts of this case, cannot be conclusively resolved as a matter of law under Illinois precedent. *Prowell*, 791 N.E.2d at 1266. Accordingly, Helmar's motion for summary judgment on Count II is denied.

## CONCLUSION

For the foregoing reasons, Helmar's motion for summary judgment is denied.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 12-13-08